IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MADIE NIXON, LATOYA CONNER, DAVID CONNER, PORTRICE VERNON, as mother of Ariana Conner, formerly a minor, and ARIANA CONNER, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 12 C 0016<br><br>Judge John J. Tharp |
| Plaintiffs, | | |
| v. | | |
| UNITED STATES OF AMERICA, | | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

This is a negligence action filed against the United States of America (the "Government") by a group of plaintiffs who allege that the Government failed to properly maintain and/or forward a form designating the plaintiffs as beneficiaries on a life insurance policy, causing them to lose insurance benefits to which they otherwise would otherwise have been entitled. The Government moves to dismiss pursuant to Rule 12(b)(6). For the reasons stated herein, the Court denies the Government's motion to dismiss.

**FACTS**[1]

This litigation concerns the life insurance benefit proceeds from a Federal Employees' Group Life Insurance ("FEGLI") policy obtained by Robert L. Conner. Conner, who was an employee of the United States Small Business Administration

---

[1] For the purposes of the motion to dismiss, the Court accepts the plaintiffs' factual allegations as true. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

1

("SBA"), died on July 15, 2009. At the time of his death, Conner owned a FEGLI life insurance policy in the principal sum of $702,000.

On December 15, 2000, Conner signed a designation of beneficiary form naming his son, Jadonn Harris Conner, as a 40% beneficiary; his nephew, D'Angelo Marzell Conner, as a 20% beneficiary; and his daughter, Ariana Portrice Conner, as a 40% beneficiary. The plaintiffs allege that on April 27, 2007, Conner completed and signed an updated designation of beneficiary form, altering the beneficiaries. The new form named his son, Jadonn Harris Conner, as a 21% beneficiary; his nephew, D'Angelo Conner, as a 10% beneficiary; his daughter, Ariana Portrice Conner, as a 50% beneficiary; his niece, Latoya Conner, as an 8% beneficiary; his sister, Madie Nixon, as an 8% beneficiary; and his brother, David M. Conner, as a 3% beneficiary. Ariana Portrice Conner, Latoya Conner, Madie Nixon, and David M. Conner are the plaintiffs in this lawsuit.

The plaintiffs further allege that after Conner signed the updated designation of beneficiary form, the two SBA employees who witnessed his signature, Maria Ramirez and Sheila Bartolomei, or some other SBA employee, took possession of the form. The SBA employees failed, however, to send the form to the SBA Office of Human Capital Management in Denver, or to any other appropriate office, in order for the form to take effect or for the insurer to pay the correct beneficiaries.[2] As a result, the insurance

---

[2] As will be discussed in detail below, there is some question whether the SBA's Chicago office, or the SBA's Denver office, was Conner's "employing office." The distinction is important because, under the FEGLI Act ("FEGLIA"), a beneficiary form is effective only if received in the insured's employing office before his death. If the Chicago office was Conner's employing office, then the updated beneficiary form was effective, and the plaintiffs' claim is that the Government negligently failed to notify the insurer of the correct beneficiaries. If the Denver office was Conner's employing office, however, then because there is no allegation that is the form was ever sent to Denver, the updated

2

company paid benefits in the amounts listed on the earlier designation form executed in 2000 (which presumably had been forwarded to the appropriate office). Under that distribution, each of the plaintiffs received less than they would have received under the updated designation form from 2007; three of the plaintiffs received nothing at all and Ariana Conner received a 40 percent distribution rather than the 50 percent distribution to which she was entitled under the 2007 beneficiary designation.

The plaintiffs now bring suit to recover from the Government the difference between the amounts that they would have received under the 2007 designation form and the amounts they actually received under the 2000 designation form.

## DISCUSSION

The Government makes three arguments in favor of dismissing the plaintiffs' complaint. First, the Government argues that the plaintiffs' *de facto* cause of action is for negligent misrepresentation, and that the FTCA does not waive sovereign immunity for claims arising out of misrepresentation. Second, the Government argues that the plaintiffs allege only economic damages, which are not recoverable in tort under Illinois law. Third, the Government argues that it had no duty to maintain the designation of beneficiary form, and because it had no duty, the plaintiffs cannot establish negligence. The Court rejects each of the Government's arguments, and finds that the plaintiffs have stated a claim for negligence.

---

beneficiary form was not effective, and the plaintiffs' claim is that the Government negligently failed to take the necessary steps to effect Conner's change of beneficiaries.

**I. Sovereign Immunity Is Waived.**

    **A. The FTCA Waives Sovereign Immunity Because Plaintiffs' Claim is Not for "Misrepresentation."**

The Government, as a sovereign, is immune from suit except as it consents to be sued, and the terms of its consent define the federal courts' jurisdiction to entertain suits against it. *See United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992). The FTCA waives the Government's immunity for:

> "claims against the United States, for money damages, . . . for injury or loss or property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). There are exceptions to the Government's waiver of sovereign immunity, however, including an exception for any claim arising out of "misrepresentation." 28 U.S.C. § 2680(h). "The exception applies to both negligent and intentional misrepresentations, as well as to both affirmative acts and omissions of material fact." *Metropolitan Life Ins. Co. v. Atkins*, 225 F.3d 510, 512 (5th Cir. 2000). The court must "look to the essential act that spawned the damages," not to "the manner in which a plaintiff chooses to plead her claim," in order to determine whether the misrepresentation exception to the FTCA's waiver of sovereign immunity bars the claim. *Id.*

The Government argues that the Plaintiffs' claim is for the Government's "misrepresentation" concerning Conner's beneficiary designations. MTD Br. (Dkt. 17) at 5. Therefore, according to the Government, the plaintiffs' claim is for negligent misrepresentation. But this argument is misdirected. To the extent that there is a

4

misrepresentation involved in the facts of this case, it is a misrepresentation made by the Government to the insurance company, not to the plaintiffs. If anyone relied on a representation as to the proper payee of the insurance proceeds, it was the insurer, not the plaintiffs, and the insurer is not a party to this suit. If the insurer had somehow suffered damages, it might be able to argue that the Government's negligent misrepresentation caused those damages. But the plaintiffs do not seek redress because of any misrepresentation by the government on which they relied; rather, they claim that the Government harmed them by *failing to send* the beneficiary designation form to the appropriate office—which is an operational task, not a misrepresentation—causing the insurance company to pay the wrong parties.

In *Atkins*, the Fifth Circuit examined a virtually identical fact pattern and determined that the plaintiffs' claims were not for negligent misrepresentation, but rather for negligent *performance of an operational task*.[3] 225 F.3d at 512-13 (rejecting argument that claim was for "negligent misrepresentation" where Government failed to retain employee's life insurance beneficiary form); *see also Redmond v. United States*, 518 F.2d 811, 816 (7th Cir. 1975) ("Where the gravamen of the complaint is the negligent performance of operational tasks, rather than misrepresentation, the government may not rely upon § 2680(h) to absolve itself of liability.") (quoting *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227, 239 (2d Cir. 1967)). The court stated that to determine whether a negligence claim arose "out of misrepresentation, we consider whether the focal point of the claim is negligence in the communication of (or failure to

---

[3] Neither party brought *Atkins* to the Court's attention. Though it is not binding precedent, the Court nonetheless expects counsel for both parties, as a matter of effective advocacy, to identify and either apply or distinguish readily available case law from federal courts of appeal involving substantially similar facts.

5

communicate) information or negligence in the performance of an operational task, with misrepresentation being merely collateral to such performance." *Atkins*, 225 F.3d at 512. The *Atkins* court described the claim as "alleging that the United States employee failed to preserve and properly file the correct copy" of the designation form, and found that the "negligent performance of an operational task allegedly caused the harm." *Id.* at 513. As in *Atkins*, the claim here was not one for negligent misrepresentation, but rather for a negligent action, and therefore the FTCA waives sovereign immunity.

A look at the elements necessary to prove negligent misrepresentation further confirms that the plaintiffs' *de facto* claim is not for negligent misrepresentation. "The elements of a negligent misrepresentation claim under Illinois law are: (1) a duty on the part of [the defendant] to communicate accurate information; (2) false statements of material fact; (3) carelessness or negligence by [the defendant] in ascertaining the truth of the statements; (4) intention to induce [the plaintiff] to act; (5) action by [the plaintiff] in reliance on the truth of the statements; and (6) damages." *F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 801 (7th Cir. 2007) (internal citation omitted). The plaintiffs do not allege that the Government induced them to act or that they acted in reliance on the truth of the Government's "statements." Rather, they argue that the Government failed to maintain the proper form, which had the legal effect of preventing them from being paid as beneficiaries to Conner's life insurance policy. The plaintiffs do not allege misrepresentation, and therefore the exception to the FTCA waiver of sovereign immunity does not apply.

**B. FEGLIA Also Waives Sovereign Immunity.**

Though the plaintiffs argue only that the FTCA waives the Government's sovereign immunity, FEGLIA also waives sovereign immunity here. The Act states that

6

"[t]he district courts of the United States have original jurisdiction . . . of a civil action or claim against the United States founded on this chapter." 5 U.S.C. § 8715. The plaintiffs, who claim that the Government breached a legal duty it owed under FEGLIA by failing to correctly maintain or forward Conner's 2007 beneficiary designation form, assert a claim founded on FEGLIA and, accordingly, this Court has jurisdiction to hear the claim. Although there is an argument to be made that "a general grant of jurisdiction to district courts to entertain actions of a certain class . . . is not a waiver of governmental immunity from suit or a consent to be sued," *Geurkink Farms, Inc. v. United States,* 452 F.2d 643, 644 (7th Cir. 1971), this jurisdictional grant—specifically authorizing suits arising under this statute—does not, in the Court's view, constitute a "general" jurisdictional grant; it is a specific grant of jurisdiction to hear suits arising under FEGLIA, and would be meaningless if sovereign immunity could be interposed as a defense to any such suit. Accordingly, numerous courts have held that § 8715's consent to jurisdiction waives the Government's sovereign immunity to claims arising under FEGLIA. *See, e.g., Barnes v. United States,* 307 F.2d 655, 657-58 (D.C. Cir. 1962); *Laporte v. United States*, No. 09-7247, 2011 WL 3678872, *4 (S.D.N.Y. Aug. 19, 2011) (citing cases). The Government, to be sure, contests the validity of the claim asserted—specifically arguing that it owes no duty under FEGLIA—but whether a claim has substantive merit is an entirely separate question from whether the Government has waived sovereign immunity with respect to that class of claim, and does not affect the jurisdiction of a court to hear the claim. (*cf., e.g., Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869, 2877 (2010)). Therefore, even if the FTCA does not waive the Government's sovereign immunity, FEGLIA does.

7

**II. The Plaintiffs Can Recover For Purely Economic Injuries.**

Next, the Government argues that the plaintiffs allege a "purely economic injury," and therefore cannot recover damages in tort. The Government cites to *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 81, 435 N.E.2d 443, 448 (Ill. 1982), which announced the economic loss doctrine rejecting the "recovery of solely economic loss[es]." *Moorman* defined "economic loss" as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* at 82 (internal citation omitted).

But the *Moorman* economic loss doctrine does not apply "[w]here a duty arises outside of [a] contract." *Neumann v. Carlson Envtl., Inc.*, 429 F. Supp. 2d 946, 952 (N.D. Ill. 2006) (quoting *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 162, 636 N.E.2d 503, 514 (Ill. 1994)); *see also Kanter v. Deitelbaum*, 271 Ill. App. 3d 750, 753-55, 648 N.E.2d 1137, 1139-40 (Ill. App. Ct. 1995) (economic loss doctrine does not apply to insurance broker who failed to maintain health insurance for client because the broker breached a fiduciary duty, not a contractual duty). Where a party has a duty independent of any contractual relationship, the economic loss doctrine does not apply. *Golf v. Henderson*, 376 Ill. App. 3d 271, 279, 876 N.E.2d 105, 113 (Ill. App. Ct. 2007) ("The *Moorman* doctrine, however, does not apply when a duty arises that is extracontractual."); *R.J. O'Brien & Assocs., Inc. v. Forman*, 298 F.3d 653, 656 (7th Cir. 2002) ("*Moorman* dictates that, when a contract sets out the duties between the parties, recovery should be limited to contract damages, even though recovery in tort would otherwise be available under the common law."). The economic loss doctrine is

designed to prevent parties from recovering in tort when they could have (or should have) recovered in contract. *Westfield Ins. Co. v. Birkey's Farm Store, Inc.*, 399 Ill. App. 3d 219, 231, 924 N.E.2d 1231, 1243 (Ill. App. Ct. 2010) ("[T]he economic-loss [doctrine] is founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover damages caused by a breach of contract.") (internal citation omitted). Even *Moorman* itself implicitly acknowledged that the economic loss rule applies only to situations where a contract creates the duty, stating that "[t]he remedy for economic loss . . . lies in contract." *Moorman*, 91 Ill.2d at 86, 435 N.E.2d at 450.

Here, neither Conner nor the plaintiffs had any contract with the Government at all, much less one that required the Government to properly file and preserve Conner's designation of beneficiary form. Therefore, any duty the Government owed Conner or the plaintiffs must have arisen from something other than a contract. As explained below, the Government's duty comes from FEGLIA or the common law, rendering the economic loss doctrine inapplicable. *See Bestfoods v. Gen. Warehouse & Transp. Co.*, No. 99-8118, 2000 WL 1310670, *6 (N.D. Ill. Sep. 13, 2000) (an argument "that the *Moorman* doctrine somehow supersedes a statutory duty of care is untenable"); *Serfecz v. Jewel Food Stores, Inc.*, No. 92-4171, 1998 WL 142427, *3 (N.D. Ill. Mar. 26, 1998) (the economic loss doctrine does not bar claims "for common law waste in Illinois even though the property at issue incurred no physical damage"). Therefore, because the plaintiffs have no contract remedy, and because the Government's actions here are not the type that are normally subject to contract, the economic loss doctrine does not apply and the Government may face tort liability for the plaintiffs' purely economic damages.

9

### III. The Government Had a Duty to Properly Maintain or Forward Conner's 2007 Beneficiary Designation Form.

That neither sovereign immunity nor the economic loss doctrine bars the plaintiffs' claims brings into focus the question of whether the Government owes any duty to the plaintiffs and, if so, whether the plaintiffs breached that duty.

#### A. The Government's Duties Related to FEGLI Forms.

The Government argues that it owes no duty to receive or maintain life insurance forms for federal employees. Courts have come to different conclusions regarding whether FEGLIA creates duties related to these forms. *Compare Atkins*, 225 F.3d at 514 ("the United States, through the personnel clerk, has a duty to maintain the designation of beneficiary forms turned over to its care as a part of its responsibilities under FEGLIA"); *with Frerichs*, 2006 WL 200812 at *2 n.3 ("the United States has no duty to properly receive, maintain, and review benefit election forms"); *Graber*, 855 F. Supp. 2d at 677 ("the only legal duty imposed on the United States under FEGLIA is to ensure that the correct FEGLI policy is negotiated and issued"). Agreeing with the case law holding the Government responsible for, at the very least, properly maintaining or submitting correctly completed forms, the Court finds that the Government had a duty with respect to the updated beneficiary form.

FEGLIA requires that life insurance benefits "shall be paid, on the establishment of a valid claim, to the [designated beneficiaries]." 5 U.S.C. § 8705(a). Payment is predicated on the Government's receipt of the designation of beneficiary form before the insured's death. *Id.* This implies that, following receipt of the form, the Government has a duty to properly preserve it in a manner that permits accurate assessment of the employee's designated beneficiaries. The Tenth Circuit, in examining FEGLIA,

10

implicitly assumed that the Government has "the responsibility to perform various ministerial acts—like distributing information and forms to employees and collecting required forms once employees have reviewed and executed them." *Metropolitan Life Ins. Co. v. Bush*, 154 F.3d 1149, 1153 (10th Cir. 1998). That conclusion must be correct; otherwise, an insured is left in the untenable position of being required by law to submit his designation of beneficiary form to an entity (the Government) that has no corresponding responsibility to maintain or forward the form. By that reasoning, the Government personnel receiving the forms could simply crumple up the forms and throw them in the trash upon receipt and the putative insureds, and their beneficiaries, would have no recourse. Further, with respect to FEGLI, the Government acts as an agent for its employees, *see, e.g., Brinson v. Brinson*, 334 F.2d 155, 158 (4th Cir. 1964), and that role gives rise to certain duties under the common law of agency. Illinois law holds, for example, that if a life insurance agent accepts an application for insurance, but fails to process it within a reasonable time, the agent is liable for harm caused by his negligence. *See Bovan v. American Family Life Ins. Co.*, 386 Ill. App. 3d 933, 940, 897 N.E.2d 288, 294 (Ill. App. Ct. 2008). That same principle applies to the Government's alleged failure here.

  The Fifth Circuit, addressing facts almost identical to those in this case, held expressly that although the Government had no duty to ensure that employees' properly complete their insurance forms, FEGLIA required the Government to properly maintain completed forms turned over to its care. *Atkins*, 225 F.3d at 514. The court also found that FEGLIA allowed plaintiffs to recover money damages against the Government, and it reversed the district court's dismissal of the lawsuit. *Id.* The Court finds *Atkins*

11

persuasive here. It makes no sense to interpret FEGLIA to require the submission of beneficiary designation forms to the Government while simultaneously absolving the Government of any responsibility for processing and maintaining those forms in the manner required by the statute to make them effective. The Court concludes, then, that the Government has a duty under FEGLI and the common law to preserve beneficiary forms submitted by employees in a manner that permits an assessment of the employee's current beneficiaries at time of death.

To be sure, other courts have come to the opposite conclusion. In *Frerichs*, the plaintiff alleged that the decedent, a governmental employee, incorrectly filled out a life insurance form, mistakenly declining certain life insurance coverage when he intended to accept that coverage. 2006 WL 200812, at *1. The decedent contacted the human resources department of his former employer, a governmental agency, and asked them to correct his form. *Id.* The agency assured him that it had corrected the form, but when he died his beneficiary learned that the agency had not done so. *Id.* When the putative beneficiary sued the Government for breach of contract, the court held that because Congress did not clearly indicate in FEGLIA that it intended to waive sovereign immunity by creating actionable duties, the Government had no duty to receive or maintain the forms. *Id.* at *2 n. 3. But, again, whether Government had a duty to maintain the forms and whether Congress waived sovereign immunity are two distinct questions. *Frerichs* acknowledged that FEGLIA created "legal duties" on the part of the Government but concluded that the duties were not "actionable" because FEGLIA did not clearly waive sovereign immunity. *Id.* But even if FEGLIA itself does not waive sovereign immunity (contrary to this Court's conclusion, above), the FTCA plainly does.

12

The FTCA did not apply in *Frerichs* because there the plaintiff alleged only a breach of contract, but in this tort case, unlike in *Frerichs*, the FTCA applies and the Government has therefore waived sovereign immunity.

Further, *Frerichs* and the cases on which it relied are also readily distinguishable, as each involved a situation in which the Government's alleged breach of duty was a failure to take affirmative action to ensure that the putative insured had filled out beneficiary designation forms appropriately. *Frerichs* itself involved an alleged failure by the government to correct a form that the insured had filled out incorrectly. *Id.* at *1. Similarly, *Argent v. O.P.M*, No. 96-2516, 1997 WL 473975, *2 (S.D.N.Y. Aug. 20, 1997) merely held that the Government has no duty to inspect the beneficiary forms it receives to determine whether they are authentic or fraudulent. *Frerichs* also relies on *Barnes*, 307 F.2d at 658-59, which held that the Government has no duty to extend an employee's life insurance into retirement when the employee fails to fill out the correct form or pay premiums, and *Robinson v. United States*, 8 Cl. Ct. 343, 345 (Cl. Ct. 1985), which held that the Government is not liable for an employee's failure to complete life insurance forms even where the Government did not send the employee the forms in a timely fashion. Each of these cases is qualitatively different than the case at hand, involving claims that the Government failed not merely to maintain or forward beneficiary forms submitted by putative insureds, but rather to take affirmative action to ensure that the decedents completed the forms in a timely and accurate manner. That the Government has no duty to ensure that its employees properly complete the forms does not mean that it has no duty to maintain or forward the properly completed forms it has accepted. Under the statutory scheme, the employee is responsible for submitting the

13

designation form to the Government; if submitted, it is the Government's concomitant responsibility to maintain the form and to transmit it to the insurer.

So far as the complaint alleges, Conner completely and accurately submitted his beneficiary form to the Government, but the Government either lost it or otherwise failed to maintain it and to transmit it to the insurer upon Connor's death. While the Court takes no issue with cases holding that the Government has no duty to ensure that each of its employees has accurately completed their FEGLI forms, or that the forms are otherwise valid when submitted, the Government—as the statutorily designated recipient of the forms—must at least maintain the forms that employees submit to it in a manner that permits the required identification of current beneficiaries set forth in § 8705.

**B. By Properly Alleging a Governmental Duty, the Plaintiffs State a Claim for Negligence.**

Plaintiffs' allege that the Government breached its duties under FEGLIA by failing to forward the updated beneficiary designation form to the SBA's Office of Human Capital Management in Denver. Cmplt. ¶¶ 8-9. Under FEGLIA, a signed and witnessed beneficiary designation form is effective if it is "received before [the insured's] death in the employing office." 5 U.S.C. § 8705(a). Therefore, if the Chicago SBA was Conner's "employing office," as the plaintiffs argue in their response brief, then the updated form became effective when Conner submitted it to SBA employees in Chicago.

The Code of Federal Regulations unhelpfully defines "employing office" as "the agency office or retirement system office that has responsibility for life insurance actions." 5 C.F.R. § 870.101. The Tenth Circuit, finding this regulatory language unclear, stated that the employing office might be the office with "responsibility for determining the existence and scope of life insurance coverage and the identification of particular

14

beneficiaries," or it might be the office with "the responsibility to perform various ministerial acts—like distributing information and forms to employees and collecting required forms once employees have reviewed and executed them." *Bush*, 154 F.3d at 1153. Because the regulatory language was unclear, the *Bush* court found that an employee could reasonably interpret it as "directing her to file [the beneficiary form] with the personnel officer at the office where she was stationed." *Id. Bush* therefore upheld a change of beneficiary form that was received at the employee's place of business before her death, but was not forwarded on to the national department of human resources until after the employee had died. *Id.* at 1154; *see also Fair v. Moore*, 397 A.2d 976, 978 (D.C. 1979) ("It is, we think, faithful to the use the term 'employing office' [to mean] the immediate government entity in the employment relationship with the insured.").

Likewise, in this case, the term "employing office" is broad enough to encompass the office at which Conner worked, and to which he submitted the form. The form need not have been submitted to the Denver office to become effective, and the insurer should have paid benefits to the plaintiffs pursuant to 5 U.S.C. § 8705(a). The Government's negligent failure to send the updated form to Denver so that it could be forwarded to the insurer caused the insurer to pay benefits to the beneficiaries listed on the outdated 2000 form. Therefore, the Government violated its duty under FEGLIA by preventing the properly designated beneficiaries from recovering insurance benefits.[4]

---

[4] And even if the Denver SBA were deemed to be Conner's employing office, and the form needed to be received in Denver to become effective, then the Government, by accepting the updated beneficiary form in Chicago, had a duty under FEGLIA or the common law to forward the form to the Denver SBA to make it effective. *See Bovan*, 386 Ill. App. 3d at 940, 897 N.E.2d at 294 (explaining common law duties of insurance agent).

The plaintiffs have therefore adequately alleged that the form was effective and the Government had a duty to forward it to the appropriate location. They have stated a claim that the Government failed to discharge that duty. Because the plaintiffs also allege that the Government's breach caused them damage, and because both the FTCA and FEGLIA waive the Government's sovereign liability, the plaintiffs have stated a claim for negligence upon which relief may be granted.

* * *

For all of these reasons, the Court denies the Government's motion to dismiss.

Date: January 4, 2013

John J. Tharp, Jr.
United States District Judge